FILED'10 FEB 24 15:02USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

**MLM PROPERTY, LLC**, a Limited Liability Company; and **L&M PRODUCE, INC.**, a Domestic Business Corporation

Plaintiffs,

v.

**COUNTRY CASUALTY INSURANCE COMPANY**, a Foreign Business Corporation,

Defendant.

Case Number CV 06-3048-CL

**ORDER**

Clarke, Magistrate Judge:

Plaintiffs MLM Property, LLC, a Limited Liability Company, and L&M Produce, Inc., a Domestic Business Corporation, ("Plaintiffs") brought an action for breach of insurance contract and intentional interference with economic relationships against Defendant Country Casualty Insurance Company, a foreign business corporation ("Defendant"), filed July 14, 2006.

On October 1, 2009, both parties filed motions for partial summary judgment on several

claims.[1] (See Dkt. Nos. 75 and 81.) On October 5, 2009, the parties stipulated to bifurcating the issues such that claims related to damages would be addressed after the scheduled trial on breach of contract. (Dkt. No. 86.) Defendant's motion for partial summary judgment was thus deferred as it dealt solely with the issue of damages as was Plaintiffs' motion for partial summary judgment on the issues of intentional interference with economic relationships ("IIER"), replacements costs, and recovery of attorney's fees and prejudgment interest above the policy limits.

On November 13, 2009, a jury found for the Plaintiffs on the issue of breach of insurance contract. The remaining three issues to be decided on summary judgment include Plaintiffs' claims for IIER, replacement costs, and cap on damages of the policy limits.

For the reasons set forth below, the court

(1) grants Defendant's motion for summary judgment on Plaintiffs' second claim for relief for IIER and denies Plaintiffs' motion for summary judgment on Defendant's first defense.

(2) denies Defendant's motion for summary judgment on replacement costs. Plaintiffs' motion for summary judgment on Defendant's second defense is granted in part. Plaintiffs are given a reasonable time after receipt of the actual cash value of their property in which to repair or replace.

(3) grants in part Plaintiffs' motion for summary judgment on Defendant's third

---

[1]Plaintiffs sought summary judgment on six specific issues: (1) that Defendant is liable to Plaintiffs for breach of the insurance policy; (2) that Defendant is liable to Plaintiffs for the intentional interference with economic relationships; (3) that Plaintiffs did not void the insurance policy through intentional misrepresentation of material facts to Defendant; (4) that Plaintiffs did not commit arson; (5) that the damages are not limited by the insurance policy limits; and (6) that Plaintiffs are entitled to replacement cost coverage. (Dkt. #75.) Defendant filed a cross motion on summary judgment on the issues of intentional interference with business relationships and replacement costs. (Dkt. #81.)

affirmative defense. Plaintiffs may recover attorney's fees and prejudgment interest above the policy limits.

## I. Standards for Summary Judgment

Pursuant to Rule 56(c), summary judgment "should be rendered, if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. Playboy Enters., Inc. v. Welles, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party must carry the initial burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). The moving party meets this burden by identifying for the court portions of the record on file which demonstrate the absence of any genuine issue of material fact. Id.; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995). All reasonable inferences are drawn in favor of the non-movant. Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts which show there is a genuine issue for trial.

Fed. R. Civ. P. 56(e)(2); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 & n.4 (1986). Summary judgment should be granted for the movant, if appropriate, in the absence of any significant probative evidence tending to support the opposing party's theory of the case. Fed. R. Civ. P. 56(e); THI-Hawaii, Inc. v. First Commerce Fin. Corp., 627 F.2d 991, 993-94 (9th Cir. 1980); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968). Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. Devereaux, 263 F.3d at 1076.

**II. Facts**

Plaintiff MLM Property, LLC ("MLM") owns real property in Merrill, Oregon. MLM also owned a potato packing shed and the equipment inside this shed. Plaintiff L&M Produce ("L&M") operated this potato packing shed. (Pl.'s Concise Statement of Material Facts ("Pls.' CSMF") ¶ 1-2.) L&M had ongoing business relationships with potato growers and sellers. (Pls.' CSMF ¶ 8.)

Country Casualty Insurance Company ("Country") issued an insurance policy, Policy No. CB5001561, to Plaintiffs that insured the building, equipment, inventory and business. (Pls.' CSMF ¶ 3.) This policy was effective between July 1, 2004 and July 1, 2006. It covered loss by fire but was subject to terms, conditions, limitations, exceptions and exclusions contained in the policy. (Def.'s Resp. to Pls.' CSMF ("Def's RCSMF") B-1.)

On July 24, 2004, a fire destroyed the potato packing shed and the equipment inside.

(Pls.' CSMF ¶ 4). Parties disputed whether the fire was a covered loss. (Pls.' CSMF ¶ 5; Def.'s RCSMF ¶ A-5.) Plaintiffs filed a proof of loss with Country on November 30, 2004.

After conducting its own investigation on the Plaintiffs' claim, Defendant concluded Plaintiff Michael J. McKoen intentionally caused the fire and misrepresented or concealed material facts surrounding the loss. (Def.'s Concise Statement of Material Facts ("Def.'s CSMF" ¶ 12.) Based on these findings, Defendant denied Plaintiffs' claim in January 2006 based on the policy's dishonest or criminal acts exclusion and its concealment, misrepresentation, or fraud provision. (Def.'s CSMF ¶ 15.)

Plaintiffs filed this case in July 2006. On November 13, 2009, a jury found for the Plaintiffs on the issue of breach of insurance contract. The jury found that plaintiffs did not "intentionally set fire to the L&M potato shed" and "did not willfully misrepresent or conceal any material fact or circumstance concerning the insurance contract, the subject of the insurance contract, or the insurance claim that relied upon by the Defendant." (Verdict November 13, 2009.)

The issue of damages remains, and the parties completed their briefing for their cross-motions for summary judgment on Plaintiffs' claims for intentional interference with economic relationships, replacement costs, and recovery of attorney fees and prejudgment interest above policy limits.

## III. Defendant's Motion for Summary Judgment on Plaintiffs' Second Claim for Relief for IIER Is Granted, And Plaintiffs' Motion for Summary Judgment on Defendant's First Defense of Failure to State a Claim Is Denied

Plaintiffs allege that Defendant intentionally interfered with their economic relationships

by conducting a spurious investigation with the purpose to avoid or reduce payment of insurance benefits. Defendant argues that there is no genuine issue of material fact on Plaintiffs' IIER claim.

There are six elements in a claim of IIER. Plaintiff must allege (1) existence of a business or professional relationship; (2) intentional interference; (3) by a third party; (4) accomplished through improper means or improper purpose; (5) causal effect between interference and damages; and (6) damages. McGanty v. Staudenraus, 901 P.2d 841, 844 (Or. 1995).

**A. Element 1: Existence of a Business Relationship**

A party must allege this element with proof of specific business or professional relationship or proof that interference prevented the party from resuming its business. It is enough to show that the injured party was unable to serve former and prospective customers. Employers' Fire Ins. v. Love It Ice Cream, 670 P.2d 160, 165 (Or. App. 1983) ("Such specificity was not necessary because defendant did allege that plaintiff's interference prevented it from resuming its business.").

Here, Plaintiffs allege business relationships with several potato producers. "Plaintiffs are business entities with economic relationships with corporations and individuals in the state of Oregon. Plaintiffs require prompt insurance recovery in order to conduct this business relationship." (Compl. ¶ 21.)

Defendant argues that Plaintiffs' complaint fails to allege a single relationship or contract between it and another individual or company. (Def.'s Mem. in Support of Mot. for Summ. J. (Def.'s Mem. in Supp.") 4.)

The court disagrees. Given the facts, a reasonable jury could conclude that Plaintiffs were unable to maintain their business relationships without their potato shed and equipment.

**B. Elements 2 and 3: Intentional interference by a Third Party**

"To recover for [IIER], a plaintiff must prove that the interference was intentional (i.e. that it was purposeful or substantially certain to result from the conduct engaged in)." Willamette Quarries, Inc. v. Wodtli, 781 P.2d 1196, 1200 (Or. 1989). The party responsible for the interference with the contract is a third party to the contract.

Plaintiffs assert that by denying their claim, Defendant intentionally interfered with its relationships with potato growers. On February 17, 2006, Defendant denied Plaintiffs' claim for loss to covered property from the July 2004 fire. Plaintiffs argue, "[w]ithout the proceeds from the insurance coverage or notice of the denial in a timely fashion, Plaintiffs were unable to rebuild the potato shed or continue their potato packing operation." (Pls.' Mem. in Opp'n to Summ. J. ("Pls.' Mem. in Opp'n") 10.) Michael McKoen explained at his deposition that L&M continued to broker potatoes for some of its customers, but without the proceeds of the claim, this was becoming infeasible. Plaintiffs argue, "[n]ot only was it apparent that a potato cleaning and packing plant would be unable to maintain relationships with customers after losing the cleaning and packing plant, but Mike McKoen put Country on actual notice that L&M's ability to maintain its customers was becoming infeasible, clearly due to the fact that the potato packing shed was not yet in operations, due ot the lack of insurance proceeds." (Pls.' Mem. in Opp'n 10.)

Taking the evidence in the light most favorable to the Plaintiffs on this matter, the court concludes that a jury could find Defendant's conduct was intentional because it knew Plaintiffs were relying on the payment of the claim to maintain some of its business relationships.

## C. Element 4: Interference Accomplished Through Improper Means or Improper Purpose

Plaintiffs argue that Defendant's interference was accomplished through the improper purpose "to avoid or reduce its payment of insurance benefits to Plaintiffs" and through improper means by basing the denial of coverage through "conduct[ing] a spurious investigation." (Compl. ¶ 23.)

For an IIER claim, a showing of interference alone is not enough: "[d]eliberate interference alone does not give rise to tort liability." Northwest Natural Gas Company v. Chase Gardens, Inc., 982 P.2d 1117, 1124 (Or. 1999). Improper means or purpose may be wrongful by "reason of statutory law or common law, and include 'violence, threats, intimidation, deceit, misrepresentation, bribery, unfounded litigation, defamation, and disparaging falsehood.' That is, the means must be wrongful in some manner other than simply causing the damages claimed as a result of the conduct." Douglas Medical Center, LLC v. Mercy Medical Center, 125 P.3d 1281, 1289 (Or. 2006) (citing Conklin v. Karban Rock, Inc., 94 Or.App. 593, 601, 767 P.2d 444, rev. den., 773 P.2d 774 (1989)).

There must also be some connection between the interference and the improper means or purpose. The words "accomplished through" indicate the necessity of a direct connection between the "interference" and the "improper means." Improper means cannot be several steps removed from the alleged interference. Douglas Medical Center, LLC, 125 P.3d at 1290.

The interference, however, may be privileged or legitimate such that the interferor avoids

liability. Courts look to purpose or motive as a controlling factor in that circumstance: "[i]f he is promoting an interest which is equal or superior in social value to that with which he interferes, his actions are said to be privileged or justified." Wampler v. Palmerton, 439 P.2d 601, 606 (Or. 1968). "Generally a defendant's subjective judgment as to its own business purposes will control." Northwest Natural Gas Company v. Chase Gardens, Inc., 982 P.2d 1117, 1124 (Or. 1999) (citing Top Service Body Shop, Inc. v. Allstate Insurance Company, 582 P.2d 1365, 1370 (Or. 1978)). A party cannot be liable for intentional interference when a party invokes an express contractual remedy that has been agreed to in a written contract. This conduct "reflects by definition, the reasonable expectations of the parties." In Uptown Heights Associates Limited Partnership v. Seafirst Corporation, 891 P.2d 639, 647 (Or. 1995). In Uptown Heights Associates Limited Partnership, the court explained that even if there is malevolent reason in invoking or enforcing a valid contractual remedy, the purpose is still legitimate. "A contrary ruling would contravene public policy and undermine the stability of contractual relations." Id.

A privilege or legitimate purpose, however, will not excuse tortious conduct. If the means would be considered tortious or wrongful, "[e]ven a recognized privilege may be overcome when the means used by defendant are not justified by the reason for recognizing the privilege." Top Service Body Shop, Inc., 582 P.2d at 1370.

> For example, in Top Service Body Shop, the Oregon Supreme Court summarized, [Defendant] sought to and did induce [Plaintiff's] patrons not to have [Plaintiff] repair their automobiles, making false statements about the quality of plaintiff's workmanship and threats about withdrawing insurance coverage or subjecting the settlement claims to possible arbitration. . . . this was done 'with the sole design of injuring Plaintiff and destroying his business,' and in an endeavor to 'compel Plaintiff to abandon the same.' If proved, along with damages and causation, these allegations satisfy the elements of the tort.

Top Service Body Shop, Inc. v. Allstate Insurance Company, 582 P.2d 1365, 1371 (Or. 1978); see also Allen v. Hall, 974 P.2d 199, 205 (Or. 1999) ("[F]raudulent misrepresentations" are "means that are improper within the meaning of Top Service.").

### 1. Defendant's Alleged Improper Purpose

Plaintiffs argue that Defendant acted with an improper purpose:

> Defendant's purpose was to inflict injury on the Plaintiffs. Specifically, Defendant's conduct shows a clear intent from the outset of its investigation to find arson as the cause of the fire, and therefore deny the claim. Yet Defendant continued to collect premiums for almost two years beyond, at clear injury to Plaintiffs. In addition, Defendant appears to have taken a substantial role in the indictment of Michael J. McKoen, in an effort to further delay the resolution of the claim and further prevent Plaintiffs from rebuilding their business.

(Pls.' Mem. in Opp'n 6.)

Defendant argues that its purpose was not improper because it was invoking its express contractual right. The contract, which both parties signed, provided that the insurer would not adjust losses caused by the insured or about which insured conceals or misrepresents facts. "We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event." The contract included exclusions of coverage for dishonest or criminal acts and concealment, misrepresentation, or fraud. (Def.'s CSMF ¶ 14.)

Defendant contends that its denial was based on the agreed upon terms of the policy and that its conduct throughout the claim was consistent with the agreed upon rights and obligations. After its lengthy investigation, Defendant concluded that the policy exclusions applied. "A denial based on the applicable policy provisions is not sufficient to support tort allegations." (Def.'s Mem. in Support 6-7.)

Plaintiffs disagree and argue that Defendant neither had nor has a legitimate purpose for denying the claim because a jury found there was no misrepresentation or concealment. (Pls.' Mem. in Opp'n 8.) Plaintiffs, however, are conflating the issues.

Plaintiffs seem to argue that Defendant lost its contractual right after the jury's verdict. Plaintiffs are correct in that as a result of the jury's verdict, Defendant breached the contract by denying the claim based on its misrepresentation, concealment, or dishonest acts provisions and exclusions. It can no longer deny the claim based on these grounds. The 2009 verdict, however, does not retroactively apply to Defendant's decision to deny the claim in 2006 to transform its contractual right into a tortious act. When the Defendant made its decision to deny Plaintiffs' claim in 2006, it was acting on its agreed upon contractual right. Plaintiffs have shown no genuine issue of material fact on the issue of improper purpose.

**2. Defendant's Alleged Improper Means**

Plaintiffs also argue that Defendant acted with improper means by conducting a "spurious investigation." However, Plaintiffs offer no evidence to show that Defendant's investigation was spurious.

The agreed upon contract provided that Plaintiffs, as the insured, had several duties in the event of loss or damage. These duties included providing access and inspection of the property, signing proof of loss statement, cooperating in the investigation, and consenting to examination under oath. (Decl. of David VanSpeybroeck in Supp. of Def.'s Mot. for Part. Summ. J. ("VanSpeybroeck Decl.") Ex. A, 32.)

There is no evidence, only conjecture, that the investigation was spurious or that Defendant's motive was to deny the claim in order to harm the Plaintiffs. Plaintiffs suggest that

Defendant's improper means are seen in its actions of collecting insurance premiums for a period of over eighteen months after the loss though Defendant ultimately denied the claim. (Pls.' Mem. in Opp'n 6.) Plaintiffs, however, offer no evidence or factual support for this theory. While the court acknowledges that the investigation was lengthy, this alone does not create tort liability.

Further, Plaintiffs' argument that Defendant conceded in their response to acting with improper means is illogical:

> Defendant seems to concede that if it breached the insurance contract, then it did not act within the reasonable expectation of the parties, and therefore the improper element is met. The jury found that Country did not have a contractual basis to deny paying the clam – there being no arson or misrepresentation. Therefore, under the standard put forth by the Defendant, Defendant, as a matter of law, acted with improper means.

(Pls.' Mem. in Opp'n 9.)

Indeed, it is a reasonable expectation of both parties that neither will breach the contract. However, it is also reasonable that a party may choose to enforce provisions that apply to the circumstances, as was done here with the policy exclusion provisions.

The contract authorized Defendant to investigate and make a decision regarding the claim. As previously explained, the jury's disagreement with the Defendant about the facts does not make past actions improper or tortious.

Plaintiffs have not shown that there is a genuine issue of material fact as to either Defendant's improper means or improper purpose.

**D. Element 5: Causal Effect**

Defendant argues there is no causal nexus between Defendant's denial of Plaintiffs' claim and the Plaintiffs' inability to continue operating its potato packing business.

"The fifth element requires a causal nexus between the interference and the damage to the relationship." Douglas Medical Center, LLC v. Mercy Medical Center, 125 P.3d 1281, 1289 (Or. 2006).

Defendant asserts, "Plaintiffs have no evidence that Country Casualty's investigation directly interfered with (or had any effect on) Plaintiffs' ability to maintain contracts with its customers, nor is there any evidence that its denial of Plaintiffs' claim had any direct connection with Plaintiffs' ability to continue their business operations." (Def.'s Mem. in Supp. 10.)

Plaintiffs disagree and simplify the causal effect argument:

> the causation is very clear: but for Country's failure to pay on the claim, MLM and L&M would have rebuilt their potato packing shed. Plaintiffs needed the proceeds from the insurance policy to pay for the cost of construction and purchasing replacement equipment. . . . Quite simply, the purpose for insuring the equipment and structure is most obviously for the purpose of replacing the loss in case of fire or other covered costs. Without the equipment and structure, L&M Produce was unable to continue to operate its potato packing and cleaning business. Without the equipment and structure, MLM had nothing on the property it owned to lease.

(Pls.' Mem. in Opp'n 11.)

Taken in the light most favorable to the non-moving party, Plaintiffs have shown there is a genuine issue of material fact. Plaintiffs told Defendant that they needed the proceeds from their claim to maintain their business relationships, and Defendant's delay in concluding their investigation and ultimately denying their claim could have impacted their ability to do business. Though the fire was the direct cause of the damage to the property, a jury could find that Defendant's actions interfered with Plaintiffs' business relationships with other potato growers.

**E. Element 6: Damages**

Damages must be alleged to some degree of certainty to satisfy element 6. Tadsen v.

Praegitzer Industries, Inc., 928 P.2d 980, 984 (Or. 1996). Defendant argues that Plaintiffs have no evidence to satisfy this final element. (Def.'s Mem. 10.) It argues that though Michael J. McKoen testified to several oral contracts with potato growers at the time of the fire, there was no evidence of the price they would pay for the potatoes or the profit they would have made upon the sales. (Def.'s Mem. in Supp. 10.)

Plaintiffs disagree and point out that the average price of potatoes for the years in question would be easily ascertainable. (Pls.' Mem. in Opp'n 12.) The court agrees with Plaintiffs. Damages could be proven to a certainty given the history of the industry.

On the issue of the IIER claim, however, Plaintiffs have not shown there is any genuine issue of material. Even when taking evidence in the light most favorable to Plaintiffs, the Plaintiffs have not offered evidence to show a reasonable jury could find for Plaintiffs on all six elements. Specifically, they offer little more than conclusory allegations for the fourth element of improper means or purpose. Defendant's motion for summary judgment on IIER claim is granted. Plaintiff's motion for summary judgment on Defendant's first defense is denied.

Accordingly, Plaintiffs' motion to amend the complaint to include punitive damages for their IIER claim is dismissed as moot.

**IV. Defendant's Motion for Summary Judgment on Replacement Costs Is Denied; Plaintiffs May Recover Replacement Costs**

Plaintiffs and Defendant signed an insurance contract in which they agreed to replacement cost insurance. "Replacement Cost insurance. . . . is any type of coverage under which the insurance company agrees . . . to pay the difference between actual cash value and full replacement cost." Higgins v. Insurance Company of North America, 469 P.2d 766, 772 (Or.

1970). This type of coverage has limitations: "[t]he basic limitation is that the insured collects on this new for old basis only if the property is repaired or replaced." Id. (internal citations omitted). "[R]epair or replacement is prerequisite to recovery under the extension. The insured can submit a claim for actual cash value when he chooses and collect any additional amount he may have coming under the replacement cost extension." Id. at 772-73 When the property is not repaired or replaced, the insured receives actual cash value.

There may be restrictions on the length of time allowed for Plaintiffs to repair and replace: "[i]t is usual to provide that repairs or replacements shall be completed with due diligence and dispatch, ordinarily within 12 months." Id. at 773 (citations omitted). If the contract does not set forth a time period to replace, the law will imply a requirement that it be done within a reasonable time. Bourrie v. United States Fidelity and Guaranty Insurance Company, 707 P.2d 60, 63 (Or. App. 1985).

Insurers generally stress "that there is an element of moral hazard in providing insurance that will replace in its entirety an old and partly obsolete building in a new condition." Higgins, 469 P.2d at 773. The Oregon Supreme Court has upheld recovery cost limitations so long as the provisions are clearly stated in the contract. Id. at 774 ("The reasons for limiting recovery to the amount actually expended for repair or replacement seem reasonable, and such a limitation should be enforced if it is clearly stated in the insurance contract.").

Plaintiffs' contract with Defendant contained a replacement cost provision. The provision explained, "We will not pay on replacement cost basis for any loss or damage: (1) Until the lost or damaged property is actually repaired or replaced; and (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage." (VanSpeybroeck Decl., Ex.

A, 35.)

In its motion for summary judgment, Defendant contends that Plaintiffs are not entitled to replacement costs because they have failed to repair or replace within a reasonable time. Defendant points out that the fire occurred over five years ago and no repair or replacement has been made. (Def.'s Mem. in Supp. 11.) In its reply, however, Defendant concedes to payment of actual cash value: "Plaintiffs have not replaced or repaired the property at this time and are not entitled to replacement costs. Therefore, Defendant requests an Order that Plaintiffs may only recover the Actual Cash Value unless and until they do replace." (Def.'s Reply 10.)

The court agrees. The circumstances surrounding this claim are not simple. Though the fire occurred in July 2004, there was a lengthy investigation that ultimately resulted in the denial of the claim only in January 2006. Since then, both parties have been actively litigating issues surrounding this denial. This includes civil litigation and a criminal indictment. Only in November 2009 was the issue of the breach of the insurance contract resolved.

The contract here does not set forth a limitation on when the insured must repair or replace. Thus, the court concludes Plaintiff are allowed a "reasonable time" to repair or replace their property, running from the date on which Plaintiffs receive the actual cash value of their insured property.

## V. Plaintiffs' Motion on Defendant's Third Affirmative Defense Is Granted in Part

Plaintiffs argue its damages are not capped by the policy limits. They assert Defendant's third affirmative defense is inapplicable to attorney's fees and prejudgment interest. (Pls.' Mem. in Supp. 26-27.)

Oregon law allows for prejudgment interest from a breach of contract claim:

"prejudgment interest may be awarded if: (1) the exact pecuniary amount is ascertained or ascertainable by simple computation, or by reference to generally recognized standards, such as market price, and (2) a time of definite default is ascertainable." Soderhamn Machine Manufacturing Company v. Martin Brothers Container & Timber Products Corp, 415 F.2d 1058, 1064 (9th Cir. 1969).

Oregon law also allows for an award of attorney's fees in an action on a policy "if . . . the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon." Or. Rev. Stat. § 742.061(1).

Defendant's third affirmative defense states,

> The insurance contract limits Plaintiffs' recovery to the specified policy limits listed in the Declarations page. . . . Plaintiffs' damage request . . . for business property, real property improvements, and business personal property exceed the applicable limits of insurance. Should Plaintiffs prevail on the breach of contract claim, they may only recover up to the policy's limit of liability.

(Answer ¶ 24.)

Defendant argues that Plaintiffs incorrectly interprets its third affirmative defense to apply to damages awarded under the IIER and other related claims. Further, "Defendant concedes Plaintiffs may assert a claim for prejudgment interest and attorneys fees because Plaintiffs prevailed at trial on their breach of contract claim." (Def.'s Resp. in Opp'n 11.)

Thus, despite the confusion in their briefs, the parties appear to be in agreement that Plaintiffs may seek prejudgment interest and attorney's fees related to their breach of contract claim. Plaintiffs' motion is granted. Plaintiffs may recover prejudgment interest and attorney's fees above the policy limits.

Parties disagree on the issue of punitive damages and damages for the tort of IIER. However, given the court's decision to grant summary judgement on Plaintiffs' tort claim of IIER, this issue is moot.

## VI. Conclusion

The court grants Defendant's motion for summary judgment on Plaintiffs' second claim for relief for IIER and denies Plaintiffs' motion for summary judgment on Defendant's first defense. Plaintiffs have not presented evidence that Defendant's interference was accomplished through improper means or purpose. Further, Plaintiff's motion to amend the complaint to add punitive damages under its IIER claim, filed on November 25, 2009 and held in abeyance on January 15, 2010, is dismissed as moot. (Dkt. No. 216.)

The court also denies Defendant's motion for summary judgment on replacement costs. Plaintiff's motion for summary judgment of Defendant's second defense is granted in part. Plaintiffs may repair or replace the property within a reasonable time from when they have received the actual cash value of the property.

Lastly, Plaintiffs may recover attorney's fees and prejudgment interest above policy limits.

DATED this 24 day of February, 2010.

MARK D. CLARKE
United States Magistrate Judge