FILED'10 MAY 7 13:59USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

**MLM PROPERTY, LLC**, a Limited
Liability Company; and **L&M PRODUCE,
INC.,** a Domestic Business Corporation

Case Number CV 06-3048-CL

        Plaintiffs,

    v.

**ORDER**

**COUNTRY CASUALTY INSURANCE
COMPANY**, a Foreign Business Corporation,

        Defendant.

Clarke, Magistrate Judge:

      Plaintiffs MLM Property, LLC, a Limited Liability Company, and L&M Produce, Inc., a

Domestic Business Corporation, ("Plaintiffs") brought an action for breach of insurance contract

and intentional interference with economic relationships against Defendant Country Casualty

Insurance Company, a foreign business corporation ("Defendant"), filed July 14, 2006.

ORDER  1

There was a jury trial from November 2 through November 13, 2009, on the issue of whether Defendant breached its insurance contract with Plaintiffs. The jury found for Plaintiffs, determining that (1) Plaintiffs did not intentionally set fire to the L&M potato shed and (2) Plaintiffs did not willfully misrepresent or conceal any material fact concerning the insurance contract, the subject of the insurance contract, or the insurance claim. (Verdict, Dkt. No. 211.) At the time of trial, the court also awarded reasonable expenses and attorney's fees to Defendant related to its October 30, 2009 motion. See Dkt. No. 189, Motion to Exclude Evidence, For a Jury Instruction, and for a Payment of Reasonable Expenses and Attorney Fees ("Def.'s Mot. to Exclude Evidence"). Because other claims still remained, no judgment was entered. A second trial is set for June 22 through June 25, 2010 for the remaining claims.

On February 11, 2010, Defendant filed (1) a Motion for a New Trial and (2) a Renewed Motion for Sanctions Under FRCP 37. Shortly thereafter, Plaintiffs filed its Motion for Reconsideration of Discovery Sanctions. The court heard oral argument on these three motions on April 8, 2010.

For the reasons set forth below, Defendant's Motion for a New Trial (Dkt. No. 240) and Renewed Motion for Sanctions (Dkt. No. 237) are denied. Plaintiff's Motion for Reconsideration (Dkt. No. 253) is granted. However, the court does not change its November 2, 2009 order awarding expenses and attorney fees related to Defendant's Motion to Exclude Evidence.

I.    **Part One:  Defendant's Motion for a New Trial**

Defendant moves for a new trial arguing that (1) the verdict is against the clear weight of the evidence, (2) Plaintiffs' attorney misconduct so permeated the trial to prejudice Defendant, and (3) letting the verdict stand would be a miscarriage of justice.

ORDER  2

## A.    Legal Standards for Granting a New Trial

The court may grant a motion for a new trial under Federal Rule of Civil Procedure 59 if (1) the verdict is contrary to the clear weight of the evidence, (2) the verdict is based on evidence which is false, or to prevent a miscarriage of justice. Silver Sage Partners v. City of Desert Hot Springs, 251 F.3d 814, 819 (9th Cir.2001); see also Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir.2007) ("Historically recognized grounds [for a new trial under Rule 59] include, but are not limited to, claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the moving party.") (internal quotation and citation omitted). A new trial is warranted on the basis of an incorrect evidentiary ruling only "if the ruling substantially prejudiced a party." United States v. 99.66 Acres of Land, 970 F.2d 651, 658 (9th Cir. 1992).

When a motion for new trial is based on insufficiency of evidence, a "stringent standard applies" and a new trial may be granted "only if the verdict is against the great weight of evidence or it is quite clear that the jury has reached a seriously erroneous result." Digidyne Corp. v. Data Gen. Corp., 734 F.2d 1336, 1347 (9th Cir. 1984) (internal quotation and citation omitted), cert. denied, 473 U.S. 908 (1985). The "district court may not grant a new trial simply because it would have arrived at a different verdict." Silver Sage Partners, 251 F.3d at 819. Rather, the "trial court must have a firm conviction that the jury has made a mistake." Landes Constr. Co., Inc. v. Royal Bank of Canada, 833 F.2d 1365, 1372 (9th Cir. 1987). When evaluating a motion for new trial under Rule 59, the court may weigh the evidence, evaluate the credibility of the witnesses, and is not required to view the evidence from the perspective most favorable to the prevailing party. United States v. Kellington, 217 F.3d 1084, 1095 (9th Cir.

ORDER  3

2000).

Thus, "[i]f the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." Kellington, 217 F.3d at 1097 (quoting United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir. 1980)).

"While the trial court may weigh the evidence and credibility of the witnesses, the court is not justified in granting a new trial 'merely because it might have come to a different result from that reached by the jury.'" Roy v. Volkswagen of America, Inc., 896 F.2d 1174, 1176 (9th Cir. 1990) (quoting Wilhelm v. Associated Container Transp. (Australia) Ltd., 648 F.2d 1197, 1198 (9th Cir. 1981). The district court has discretion in deciding whether to grant a new trial. Unocal Corp. v. United States, 222 F.3d 528, 534 (9th Cir. 2000).

"[A] party is entitled to a new trial when opposing counsel's conduct causes prejudice to that party . . . thereby unfairly influencing the verdict." Tesser v. Board of Ed. Of Citey School Dist. Of City of New York, 370 F.3d 314, 321 (2nd Cir. 2004) (citing Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 51 (2nd Cir. 1998)). The party seeking a new trial "must make a concrete showing that the misconduct of counsel consistently permeated the entire trial from beginning to end." Sutkiewicz v. Monroe County Sheriff, 110 F.3d 352, 361 (6th Cir. 1997).

When determining the prejudicial effect of attorney misconduct, courts look to the "totality of the circumstances" and weigh such factors as the "nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case, and the verdict itself."

ORDER  4

Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1193 (9th Cir. 2002) (internal citations omitted).

In Tesser, the court concluded,

> [i]n light of the relative lack of severity of the apparent misconduct, the district
> court's curative instructions, and the court's willingness to adopt remedial
> measures . . . , we conclude that the court did not abuse its discretion by
> determining that defendant's lawyer's statements did not unfairly influence the jury
> deliberations and verdict . . . and that a new trial was therefore not warranted on
> that basis.

350 F.3d at 322.

"To warrant reversal on grounds of attorney misconduct, the flavor of misconduct must

sufficiently permeate an entire proceeding to provide conviction that the jury was influenced by

passion and prejudice in reaching its verdict." Kehr v. Smith Barney, Harris Upham and Co.,

Inc. 736, F.2d 1283, 1286 (9th Cir. 1984) (internal citations and quotations omitted).

## B.    Defendant's Motion for a New Trial Is Denied

Defendant's motion for a new trial is denied.  First, Defendant asserts that the verdict is

against the clear weight of the evidence.  Defendant argues that Plaintiffs failed to address the

scientific conclusions presented by Defendant's experts who had determined that Michael

McKoen started the fire.  Defendant also contends that there is no credible evidence that the fire

was not intentionally set.  It contests Plaintiffs' theory that slag could have started the fire and

argues there is no credible evidence to support it.

Second, Defendant argues that misconduct by Plaintiffs' counsel warrants a new trial.

Defendant asserts that counsel withheld evidence, repeatedly and impermissibly referenced

Plaintiff Lee McKoen's heart condition, improperly asked the jury for sympathy in reaching the

verdict, encouraged speculation against the weight of the evidence, and mischaracterized and

misstated facts in the closing argument to confuse and mislead the jury.

Third, Defendant argues that without a new trial there would be a miscarriage of justice. Defendant alleges Plaintiffs' counsel repeatedly disregarded the court's order regarding Scott Rice's testimony during closing and made statements that were improper, prejudicial and fundamentally unfair.

Defendant has not convinced the court that a new trial is warranted under any of its three arguments.[1]

## 1.      Jury's Verdict Is Not Against the Clear Weight of the Evidence

A new trial is appropriate if the court concludes that the jury's verdict is against the clear weight of the evidence.  Defendant argues, "Plaintiffs presented no credible evidence from which a reasonable jury could find Michael McKoen did not intentionally set fire to the L&M potato shed.  At most, Plaintiffs engaged in speculation that an 'accident' could have somehow caused the fire, but Plaintiffs presented no evidence in support of this theory."  (Mem. in Supp. of Def.'s Mot. for a New Trial 4.)

The Defendant asserted two affirmative defenses to Plaintiffs' claims.  It asserted that (1) Mike McKoen intentionally started the fire and/or (2) Mike McKoen willfully misrepresented or concealed material facts.  Defendant had the burden of proof, based on the preponderance of the evidence, on these defenses.

The court instructed the jury on the burden of proof:

> When a party has the burden of proof on any . . .  affirmative defense by a

---

[1]  Plaintiffs argue that Defendant's motion should be denied because it did not comply with Rule 50 and standards for a judgment as a matter of law.  However, Defendant filed a motion for a new trial under Rule 59 and thus standards for Rule 50 motion for judgment as a matter of law do not apply.

ORDER  6

preponderance of the evidence, it means you must be persuaded by the evidence that the . . . affirmative defense is more probably true than not.  Preponderance of the evidence means the greater weight of the evidence.  It is such evidence that, when weighed with that opposed to it, has more convincing force and is more probably true and accurate.

In determining whether a party has proved a[n] . . . affirmative defense by a preponderance of the evidence, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received, regardless of who may have offered them.

If, upon any question in this case, the evidence appears to be equally balanced, or if you cannot say upon which side it weighs heavier, you must resolve that question against that party.

(Jury Instructions (Dkt. No. 213) 10-11.)

The jury was also instructed on evaluating the testimony of expert witnesses:

Some witnesses, because of education or experience are permitted to state opinions and the reasons for those opinions. Opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all other evidence in the case. In determining what evidence you will accept you must make your own evaluation of the testimony given by each of the witnesses, and determine the degree of weight you choose to give that testimony.

(Jury Instructions (Dkt. No. 213) 7-8.)

Defendant argues that, contrary to the jury's verdict, it has clearly met its burden because of the credible evidence it presented at trial.  The court disagrees.

The jury was instructed to weigh all the evidence and determine whether Defendant had proven either of its defenses.  Using the preponderance of the evidence standard, the jury could reasonably find that Defendant had not met its burden, even assuming it found its evidence credible.   Plaintiffs needed only to present enough evidence to diminish the weight Defendant's evidence, persuading the jury that find Defendant had not met its "more probable than not" burden.  Plaintiffs presented evidence affecting the weight of Mr. Whitaker's testimony, the

ORDER  7

credibility of Mr. Austin's testimony, and Defendant's evidence that the fire was incendiary.

First, Plaintiffs' questioned the thoroughness and completeness of defense expert Gene Whitaker's cause and origin investigation through its expert Steven Gunsolley. Mr. Gunsolley testified that he had reviewed Mr. Whitaker's report and explained to the jury problems in the investigation and how his opinion differed from Mr. Whitaker's. He noted that the fire scene was not secured prior to Mr. Whitaker's investigation. (Dkt. No. 261-2 60-61.) He also commented that he would have consulted an engineer during his investigation but Mr. Whitaker had not. (Dkt. No. 261-2 62.) He further explained that, in his opinion, Mr. Whitaker had not gone "far enough" in his investigation and determination of caus and origin. For instance, he believed the electrical system had not been properly analyzed and that Mr. Whitaker had not eliminated other potential areas of origin such as the storage area and break room. ((Dkt. No. 261-2 65.) Lastly, Mr. Gunsolley commented that an analysis of the burn pattern would not be helpful in the L&M potato shed fire investigation because of "free burn" nature of the fire. (Dkt. No. 261-2 60-71.) Mr. Gunsolley's opinion of the utility of the burn pattern was contrary to Mr. Whitaker's who relied upon these burn patterns in his investigation. See Dkt. No. 257-2 65-167. At the conclusion of direct examination, Plaintiffs' counsel asked Mr. Gunsolley, "based upon your review of Mr. Whitaker's analysis, the photos, the witness interviews, the other investigation reports, the file, in your opinion, did Mr. Whitaker have sufficient evidence to conclude the fire was incendiary?" Mr. Gunsolley responded, "No." (Dkt. No. 261-2 89.) The jury could reasonably interpret Mr. Gunsolley's testimony to diminish the weight of Defendant's evidence.

Second, Plaintiffs presented evidence to question the credibility of former state police investigator Maurice Austin, who is now a private consultant. Specifically, Plaintiffs presented

ORDER  8

evidence that Mr. Austin changed his origin determination just before trial to one that appeared more favorable to Defendant. Counsel suggested that Mr. Austin's defense-favorable determination should be evaluated in weighing his credibility, and such credibility determination would also affect the weight of Defendant's evidence. (Pls.' Opp. to Def.'s Mot. for New Trial 7-9.)

Third, Plaintiffs offered evidence to question from Defendant's theory that the fire was incendiary in nature. Plaintiffs did not have to prove an alternative theory because it was Defendant's burden, but they did present evidence that the jury could use in its determination of the weight of the evidence. Plaintiffs argued that, given many of the unknown factors due to the "free burn" nature of the fire, Defendant had not ruled out the possibility that the fire was accidental in origin. Plaintiffs suggested that welding activities on the day could have produced slag which may have ignited a fire. For support, Plaintiff's expert Wayne Scott testified about the risk of slag in fire ignition and how, in his experience, slag could travel several feet up into the air depending on a variety of variables, including air pressure, the thickness of the cut, and the size of the torch tip  (Pls.' Opp. to Def.'s Mot. for New Trial 9-11.)

In sum, Defendant argues that its evidence was credible and thus the verdict was in error, but Defendant overlooks its burden of proof. From this evidence and other evidence presented at trial, the jury found that Defendant had not met its burden on its affirmative defenses. The jury found that the weight of all the evidence was for the Plaintiffs, and the court finds that its verdict was supported by the evidence.

ORDER  9

## 2.    The Alleged Misconduct Did Not Permeate the Trial

Defendant argues, "Plaintiffs' counsels' misconduct during the course of the trial permeated the proceedings and caused the jury to be influenced by passion and prejudice in reaching its verdict."[2]  Defendant argues that there were at least four different instances of attorney misconduct.[3] Assuming, but not deciding for the purposes of this order that the actions constituted misconduct, the court only addresses whether such alleged misconduct could have consistently permeated the trial.

First, Defendant argues that, throughout the trial, Plaintiffs insisted on bringing Lee McKoen's heart condition to the forefront, either in questions to witnesses or in his closing argument, "as a thinly veiled attempt to curry sympathy from the jury." (Mem. in Supp. of Def.'s Mot. to Dismiss 13.)  As Plaintiffs pointed out in their opposition to this motion, Defendant did object when its counsel found this line of questioning problematic.  (Dkt. No. 262-2 26, 104.)

Although Plaintiffs' counsel may have gone too far in some of his closing statements, Defendant has not shown that the jury was improperly swayed.  Where appropriate, the court

---

[2] As a preliminary matter, Plaintiffs argue that because the Defendant did not object to some of Plaintiffs' counsel's statements, it has, in some way, waived its ability to argue post-verdict that there was misconduct at the time of trial.  In Hemmings, the Ninth Circuit explained, "[t]he federal courts erect a 'high threshold' to claims of improper closing arguments in civil cases raised for the first time after trial. . . .  We will review for plain or fundamental error, absent contemporaneous objection . . . , where the integrity or fundamental fairness of the proceedings in the trial court is called into serious question." 285 F.3d at 1192 (internal quotations and citations omitted).  Though the Defendant did not object in every instance of alleged misconduct now detailed in its motion, the court declines to apply the "high threshold" that Plaintiffs seek for plain error in assessing the gravity of the alleged misconduct.

[3] Defendant also argued that there was misconduct, alleging Plaintiffs' counsel also withheld significant evidence.  On October 30, 2009, Defendant filed a motion for sanctions under Rule 37 for failure to timely provide significant financial records during the course of discovery.  On November 2, 2009, the court awarded attorney fees to Defendant based on its Motion to Exclude. (Dkt. No. 254-2 46-48.)  Defendant has additionally filed a renewed motion for sanctions on the same issue arguing that the records were relevant, admissible, and not produced in accordance with the rules. (Dkt. No. 237.)  This issue is discussed further in Part II.

ORDER  10

mitigated improper statements by sustaining objections and striking such statements from the record. There is no evidence here that the jury was influenced by passion or prejudice in reaching its verdict.

Second, Defendant argues that Plaintiffs tried to sway the jury by invoking sympathy for the McKoen family. (Mem. in Supp. of Def.'s Mot. for a New Trial 15.) During closing arguments, Plaintiffs' counsel stated,

> [I]f there is no motive, maybe that theory is wrong because common sense tells you what's his reason for burning it down? They said you shouldn't have sympathy on Lee McKoen, or could have sympathy but don't let that steer your decision. I propose this: Don't have sympathy for Mr. Lee McKoen, if it is an intentional fire, rather have sympathy for him and his wife because they probably have a psychopathic son and you're going to tell them as such. Please, consider that because Mr. Mike McKoen . . . had no motive, no stake in this. So if he burned it down it must have been for the kicks. He's too responsible of a young man to do something like that. That is really a desperate sick act.

(Transcript, Dkt. No. 262-2 112-13.)

Defendant contends, "[t]his argument had no relevance to any issues in the case, and was a transparent attempt to garner sympathy of the jury, and urge them to save Lee and Diane McKoen from what Plaintiff's counsel characterized as Country's attempt to state their son was "psychopathic." (Mem. in Supp. of Def.'s Mot. for a New Trial 15.)

Based on his closing, Plaintiffs' counsel seems to argue that Mike McKoen had no motive for arson and thus concludes the only way Mike McKoen could be responsible for the fire was if he is a psychopath. Not surprisingly, Plaintiffs' counsel then argues Mike McKoen is not a psychopath.

Though counsel's argument may be based on faulty logic and showed a lack of respect and understanding of the seriousness of mental illness, the court does not believe that the jury

ORDER  11

was improperly influenced by it.

Third, Defendant argues that Plaintiffs' counsel "impermissibly asked the jury to engage in speculation as to the cause of the fire." (Mem. in Supp. of Def.'s Mot. for a New Trial 16.) Defendant argues a new trial is warranted because "Plaintiffs' [closing] argument called the jury to speculate about the cause of the fire, which directly contradicted the scientific evidence presented by Country's cause and origin investigator, Gene Whitaker, and Maurice Austin, the Oregon State Police investigator assigned to the case." (Mem. in Supp. of Def.'s Mot. for a New Trial 17.)

Again, Defendant asserts that because it had credible experts, a verdict for Plaintiffs must be in error. But, as previously discussed, Defendant had the burden of proof. Using a preponderance of the evidence standard, the jury could still find Defendant's evidence credible but return a verdict for Plaintiffs. See infra Part I.B.1. Here, Plaintiffs presented evidence that there were many unknowns pertaining to the cause and origin of the fire, and it effectively put into question Defendant's conclusion that the fire was incendiary. Making this argument was not improper nor did it unfairly prejudice the Defendant.

Fourth, and lastly, Defendant asserts that during his closing argument Plaintiffs' counsel mischaracterized and misstated the evidence in an attempt to confuse and mislead the jury. (Mem. in Supp. of Def.'s Mot. for a New Trial 17.) Defendant argues that Plaintiffs' counsel mischaracterized the testimony from its expert witness Gene Whitaker and former police investigator, now private consultant, Maurice Austin. Plaintiffs' counsel suggested that these experts were unable to come to a conclusion about the area of origin. Defendant also disagrees with Plaintiffs' counsel's boxes-to-welding-area distance.

ORDER  12

Even if these were misstatements, Defendant has not shown how they consistently permeated the trial to warrant a new one. The jury weighed the evidence that was presented throughout the trial, including testimony from both parties' experts. It also heard Defendant's closing argument, in which it was given the opportunity to restate the evidence and clarify its interpretations and arguments. (Dkt. No. 282-2 79.)

In sum, and without determining whether there was misconduct, the court does not find a new trial is warranted here. The alleged misconduct did not consistently permeate the trial as a whole, and the court concludes that the verdict would not have been different, even in the absence of Plaintiffs' counsel's alleged misconduct.

### 3.    There Was No Miscarriage of Justice

Defendant also argues, "[t]he jury's verdict was a miscarriage of justice because Plaintiffs' counsel repeatedly disregarded the Court's order regarding Scott Rice's testimony during his closing arguments and made statements to the jury that were improper, prejudicial, and fundamentally unfair." (Mem. in Supp. of Def's Mot. for a New Trial 19.)

The court gave the scope of Scott Rice's testimony careful thought and consideration leading up to and throughout the course of the trial. For example, at the request of Defendant, the court held an evidentiary *Daubert* hearing to evaluate the admissibility of Rice's testimony, outside the presence of the jury. At the conclusion of the hearing, the court determined that Mr. Rice's testimony should be limited and gave the following limiting instruction to the jury:

> Plaintiffs are now calling as a witness Mr. Scott Rice. You [are] instructed that the testimony of Mr. Rice that the fire was indeterminate should not be considered by you as the end result of a complete and scientific[] origin and cause investigation. It is rather offered to explain that he could not determine a cause based on his limited origin and cause investigation. This is not intended by the

ORDER  13

Court to comment on his testimony which should be evaluated like any other witness according to the instructions given you at the end of the case. This is simply to explain the scope of his testimony on this one subject.

Dkt. No. 261-2 179-80.)

Defendant argues that during closing argument, Plaintiffs' counsel strayed into topics outside the permitted scope, thereby prejudicing Defendant. "Despite this Court's ruling, Plaintiffs' counsel took it upon himself to introduce [evidence the court explicitly excluded under *Daubert*] to the jury in argument, in order to plant a seed in their collective mind that they should disregard the actual scientific evidence that was presented. Doing so was unethical, improper, and prejudiced Country." (Mem. in Supp. of Def.'s Mot. for a New Trial 22.)

Plaintiffs, on the contrary, argue that counsel neither mischaracterized nor misstated evidence and, in fact, was very cautious in using Mr. Rice's testimony.

The record shows Mr. Millard was very cautious in his references to Mr. Rice's testimony. He specifically told the jury to consider that Mr. Rice did *not* complete a scientific investigation – hardly a statement that one makes when trying to convince the jury otherwise. Mr. Millard then withdrew comments that were inline with the testimony and the court's instruction – going above and beyond what was required to avoid improper references to Mr. Rice's testimony.

(Pls.' Opp. to Def.'s Mot. for New Trial 24.)

After reviewing the record, the court determines that Defendant was not substantially prejudiced by Plaintiffs' closing. Indeed Plaintiffs' counsel did encourage the jury to question Defendant's experts and he did use Mr. Rice's testimony as part of his argument about credibility, but Defendant's counsel objected. The court took curative measures, as appropriate. (Dkt. No. 262-2 26, 104.) Later, when Plaintiffs' counsel made similar off-topic statements in his rebuttal, Defendant objected, but Plaintiffs' counsel withdrew statements without necessitating the court's

ORDER 14

ruling.

Defendant had a fair trial. Over the course of an emotionally charged, two-week trial, both counsel did their best to advocate on behalf of their clients. The jury heard the limiting instruction, it heard Mr. Rice's testimony, and it heard the closing arguments, objections, and that specific impermissible evidence should be stricken. With this and all the evidence presented during the trial, the jury made its decision. Defendant has not shown how, within the context of the entire trial, a few statements in closing and rebuttal resulted in an absolute miscarriage of justice.

## II.    Part Two:  Court's November 2, 2009 Sanctions on Plaintiffs

Defendant filed a motion related to newly discovered evidence on October 30, 2009. Defendant asked the court (1) to exclude evidence, (2) to instruct the jury on related evidence, and (3) order payment of reasonable expenses and attorney fees under Federal Rule of Civil Procedure 37. (Def.'s Mot. To Exclude Evidence 1.)

At the heart of the motion were documents formerly contained on company computers damaged by the July 2004 fire. On April 3, 2007, Defendant served Plaintiffs a request "to produce forensically sound copies of all hard drives on the desktop computers, laptop computers, notebook computers, personal digital assistant computers, servers, or other electronic media." (Mem. in Supp. of Def.'s Renewed Motion for Sanctions Pursuant to FRCP 37 ("Def.'s Mem. in Supp. of Mot. for Sanctions") 2.) Plaintiffs agreed to produce discoverable documents. (Def.'s Mem. in Supp. of Mot. for Sanctions 2-3.) However, prior to production, the case was abated until early January 2009. On August 27, 2009, after the case was back on the trial docket, Plaintiffs' counsel informed Defendant that back-up tapes of the company computers existed but

ORDER  15

were damaged.  (Def.'s Mem. in Supp. of Mot. for Sanctions 3.)  Defendant attempted to retrieve

documents from the damaged back-up tapes but soon learned it would be cost-prohibitive.  It

communicated these problems to Plaintiffs' counsel who stated he would check further with the

Plaintiffs about the computer files.  (Def.'s Mem. in Supp. of Mot. for Sanctions 3.)

In September 2009, Defendant was under the impression that Plaintiffs were investigating

alternative ways to access the desired information from other sources.  (Def.'s Mot. To Exclude

Evidence 2-3.)  It was not until October 22, 2009, only two weeks before trial and well past the

discovery deadline, that Plaintiffs contacted Defendant and explained that an external hard drive

now existed from which they could retrieve the same documents that were also located on the

computer back-up tapes.

Defendant interpreted this late October production of the external hard drive as a failure

to comply with the discovery rules.  Defendant filed a motion for sanctions asking (1) evidence

from the hard drive be excluded, (2) the jury be given an instruction informing them of Plaintiffs'

failure to comply with discovery rules, and lastly (3) payment of expenses and fees related to

bringing the motion.  It argued Plaintiffs failed to comply with discovery rules and should be

sanctioned. The court heard oral argument on this issue on November 2, 2009, prior to counsel's

opening statements.

Ruling from the  bench, court declined to exclude the evidence from the trial or provide a

jury instruction as Defendant requested.  The court did require Plaintiffs to pay expenses and fees

related to the motion.  In addition, the court provided that Defendant may later renew its motions

for sanctions after it had the opportunity to review the materials obtained from the external hard

drive.  The Honorable Mark D. Clarke ruled from the bench stating, "I do think the defense

ORDER  16

should have a right to a prayer for damages, . . . it is troubling for that kind of new information to

come forth with all the disclosures we have here. . . . I'm going to grant the motion for attorney

fees as it relates to this motion. " (Dkt. No. 254-2 48.)

Defendant now renews its motion for sanctions because "the information provided by

Plaintiffs was relevant, admissible, and had not been produced in accordance with the rules."

(Def.'s Mem. in Supp. of Mot. For Sanctions 2.)  It requests, "Plaintiffs be required to pay

Country's costs caused by Plaintiff's failure to timely provide significant financial records during

the course of discovery, as well as, an additional monetary sanction due to the severity of the

discovery violation in an amount equal to any judgment entered against Country in this case."

(Def.'s Mem. in Supp. of Mot. For Sanctions 2.)

Not surprisingly, Plaintiffs disagree.  Shortly after Defendant brought its renewed motion

for sanctions, Plaintiffs filed a motion for reconsideration of the court's existing November 2,

2009 Order, imposing expenses and fees on Plaintiffs.  Plaintiffs contend, "the evidence

presented during trial showed that there was no prejudice to Defendant." (Pls.' Mot. to

Reconsider Discovery Sanctions 1-2.)

The court first considers Plaintiffs' motion to reconsider.  Next, the court considers

whether to alter its November 2, 2009 Order.  Lastly the court considers Defendant's renewed

motion for sanctions.

### A.    Plaintiffs' Motion to Reconsider Is Granted

Plaintiffs ask for reconsideration of the court's November 2, 2009 Order.  The court has

the discretion to reconsider and vacate a prior order.  Barber v. Hawaii, 42 F.3d 1185, 1198 (9th

Cir. 1994); United States v. Nutri-cology, Inc., 982 F.2d 394, 396 (9th Cir. 1992).

ORDER  17

Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." Kona Enterprises, Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000).    To succeed in a motion to reconsider, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. See, e.g., Kern-Tulare Water Dist. v. City of Bakersfield, 634 F.Supp. 656, 665 (E.D. Cal.1986). The party moving for reconsideration should make a convincing showing that the Court failed to consider material facts that were presented to the Court.  Stockamp & Assoc., Inc. v. Accretive Health, 2005 WL 425456 at *7 (D. Or. 2005).

Plaintiffs' argue reconsideration is proper:  "the parties were unable to fully brief to the court the history of the production request and Plaintiffs' numerous efforts to comply with the request."  (Pls.' Mot. to Reconsider Discovery Sanctions 1-2.)

The court grants Plaintiffs' request for reconsideration and reviews all the information related to documents found on the external hard drive, including briefing on Plaintiffs' motion to reconsider and Defendant's renewed motion for sanctions.

**B.    The Court Declines to Alter November 2, 2009 Sanctions**

Under Federal Rule of Civil Procedure 37, the court may impose sanctions on a party who fails to comply with discovery rules:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions.

ORDER  18

On November 2, 2009, the court granted Defendant's motion, in part, for sanctions. The court found that the delay in production of the documents was not substantially justified and awarded attorney fees related to Defendant's motion.

Plaintiffs now ask the court to reconsider these sanctions, arguing that their production of documents was reasonable, given that the back-up tapes were damaged and the external hard drive was first created in October 2009. Further, Plaintiffs argue that even if the court finds they should have produced the documents or supplemented production earlier, any delay was harmless because the documents were already available to Defendant from previous production requests. (Pls.' Opp. to Def.'s Renewed Mot. for Sanctions 5.)

Defendant disagrees and asks that, at a minimum, the court's sanctions remain unchanged. Defendant contends that the late production was not justified and that the delay further prejudiced the Defendant at trial. Defendant points out that it made requests for these documents as early at December 15, 2004, and notes that Plaintiffs agreed to produce documents before the case was abated in late 2007. (Def.'s Resp. to Pls.' Mot. to Reconsider Discovery Sanctions 3.)

Though Plaintiffs provided their interpretation of events leading to the production of the external hard drive and seemingly explained the delay, they simply have not presented any new evidence to convince the court to change its previous order. The court's November 2, 2009 Order is unchanged.

### C.    The Court Denies Defendant's Renewed Motion for Sanctions

Now that Defendant has had more time to review the documents obtained from the external hard drive, it renews its motion for sanctions, asserting that Plaintiffs' delay in production was neither harmless nor substantially justified. It argues further sanctions are

ORDER  19

warranted: "Country requests that Plaintiffs be required to pay Country's costs caused by

Plaintiffs' failure to timely provide significant financial records during the course of discovery,

as well as, an additional monetary sanction due to the severity of the discovery violation in an

amount equal to any judgment entered against Country in this case." (Def's Mem. in Supp. of

Mot. for Sanctions 7-8.)

Defendant argues that it was entitled to all accounting records from the insureds and that

it properly requested them during discovery. Defendant contends that the documents it requested

had been available since the day the fire occurred but never produced. As evidence, it notes that

the L&M Accounting records had been backed up a week prior to the fire and the back-up files

were with bookkeeper Kristine Golden when the fire occurred. (Def.'s Mem. in Supp. of Mot. for

Sanctions 5.) It asserts that Plaintiffs simply failed to timely produce.

Defendant also questions Plaintiffs' assertion that it had no other way of obtaining the

documents located on the damaged back-up tapes, prior to the creation of the external hard drive.

It is clear that Defendant found it problematic that just before trial Plaintiffs "suddenly happened"

upon the external hard drive it ultimately produced at the eve of trial. (Def's Mem. in Supp. of

Mot. for Sanctions 5.)

Defendant explains that it was harmed by the late production:

By the time Country received all the relevant materials, including a group of other
documents that were relevant and related to the financial documents, it was too
late to analyze them, follow-up on them, or use them as part of their defense in the
case. Country sent the disc by overnight mail to its financial experts, and they
attempted to retrieve the information from the disc, and review the documents.
Not only did the disc contain additional financial information, including grower
records that Country's experts had needed, but there were other relevant
documents on the disc.

ORDER  20

(Def's Mem. in Supp. of Mot. for Sanctions 5-6.)

The late produced documents included a proposal addressed to Cal-Ore Produce, Inc., to sell L&M Produce and MLM Property companies and also a withdrawal of this proposal, both authored by Mike McKoen.  (Decl. of David VanSpeybroeck in Supp. of Reply in Supp. of Defs.' Mot. for Sanctions Ex. 1-2.)  Because of the lateness of the disclosure, Defendant contends it was harmed because it was unable to investigate on the details of these business letters as they related to the case.  "By the time Country was provided the documents, it was too late for Country's experts to analyze them or for Country to effectively use the documents at trial."  (Def's Mem. in Supp. of Mot. for Sanctions 6.)

Plaintiffs argue that no sanctions, let alone additional sanctions, are warranted.  First, they argue that the financial records on the hard drive had already been produced.  "Defendant already had the records sought, no supplemental discovery was required.  Assuming that a supplemental discovery of the electronic data in a separate form was required, the failure to do so was harmless because Defendant already had the data."  (Pls.' Opp. to Def.'s Renewed Mot. for Sanctions 5.)

Second, Plaintiffs argue that the late production of documents related to a potential transaction between Cal-Ore and L&M/MLM was harmless because Defendant knew of the discussions between the companies as early as September 2004.  Further, they argue, there can be no harm because Defendant was allowed to use these documents at trial.  (Pls.' Opp. to Def.'s Renewed Mot. for Sanctions 6.)

Defendant's motion for renewed sanctions is denied.  While the court finds Plaintiffs' proposed history and explanation of its production unclear and, at times, problematic, there is no evidence presented to justify sanctions beyond those imposed in the November 2, 2009 Order,

ORDER  21

which awarded Defendant reasonable expenses and attorney fees related to bringing its motion to exclude evidence.

## III.    Conclusion

Defendant has not presented evidence that convinces the court a new trial is necessary. Defendant's Motion for a New Trial is denied. (Dkt. No. 240.) The verdict is not against the clear weight of the evidence; alleged misconduct did not consistently permeate the trial; and there was no miscarriage of justice.

The court's November 2, 2009 order of sanctions awarding fees and expenses to Defendant remains unchanged. The court grants Plaintiffs' motion to reconsider (Dkt. No. 253) its November 2, 2009 Order awarding fees and expenses. However, Plaintiffs have not convinced the court that these sanctions should be reduced. Further, Defendant has not shown how additional sanctions are warranted; accordingly, Defendant's renewed motion for sanctions is denied. (Dkt. No. 237.)

DATED this ___7___ day of May, 2010.

MARK D. CLARKE
United States Magistrate Judge

ORDER  22